UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Ingerson,                    :
        Petitioner,                :
                                   :
        v.                         :        File No. 2:08-CV-121
                                   :
Robert Hofmann,                    :
        Respondent.                :


MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 1)

Petitioner James Ingerson, proceeding *pro se*, has filed
a petition for writ of habeas corpus pursuant to 28 U.S.C. §
2254. His claims include ineffective assistance of counsel;
failure to arraign on an amended charge; insufficient
evidence of intent; unfair sentence; conflict of interest on
the part of the State's Attorney and Probation and Parole;
lack of proof that he reviewed the pre-sentence report
before his sentencing; and an argument that his prior felony
convictions for driving while intoxicated should have been
considered a single offense at his sentencing. For the
reasons set forth below, I recommend that the petition be
DISMISSED.

Factual and Procedural Background

In March 2002, Ingerson broke into a restaurant in
Brattleboro, Vermont. Once inside, he tried to break into

the restaurant's safe but ended up only badly damaging the handle. He left the restaurant after taking some loose change from a desk drawer.  See State v. Ingerson, 176 Vt. 428, 429-30 (2004).

Ingerson was initially charged with burglary and unlawful mischief in violation of 13 V.S.A. §§ 1201 and 3701(c), respectively.  The State subsequently filed an amended information seeking an enhanced penalty under 13 V.S.A. § 11 due to Ingerson's four prior felony convictions. On October 28, 2002, after a jury trial, Ingerson was convicted of burglary and unlawful mischief and was sentenced as an habitual offender to 20 to 30 years in prison.  Id. at 430.

Ingerson appealed his conviction to the Vermont Supreme Court, setting forth three arguments: (1) that the trial court failed to arraign him on the habitual offender charge; (2) that there was insufficient evidence of his intent to commit larceny; and (3) that his sentence was unjust and unfair.  The Vermont Supreme Court affirmed the conviction and sentence.  Id. at 435.

On December 6, 2004, Ingerson filed a motion for post-conviction review in Vermont Superior Court.  Although the

motion raised a series of claims, those claims were narrowed to a "claim that his trial attorney was ineffective for failing to provide him an opportunity to read his pre-sentence report and seek a continuance to respond to the report." In re Ingerson, 2008 WL 2811220, at *1 (Vt. March Term 2008). The petition was denied, and on appeal the Vermont Supreme Court affirmed.

Ingerson filed his § 2254 petition on May 30, 2008. The petition offers several grounds for relief, including the ineffective assistance of counsel claim raised in the state court PCR petition. The petition also submits the three grounds for relief that were presented to the Vermont Supreme Court on direct appeal. Ingerson's fifth argument, that his lengthy sentence arose out of his conflicts with prosecutors and the Windham Probation and Parole office, does not appear to have been raised in any state court appeal.

On June 30, 2008, Ingerson moved to amend his petition to add two additional grounds for relief. The Court granted his motion. Consequently, the petition now includes a claim that Ingerson's four convictions for driving under the influence, all of which occurred in early 1998, should not

have been characterized as separate offenses for purposes of Vermont's habitual offender statute. In a companion claim, Ingerson contends that trial counsel was ineffective for failing to raise this argument at sentencing. It is undisputed that neither argument has been presented to the Vermont Supreme Court.

On September 9, 2008, the respondent moved to dismiss the petition because it contained unexhausted claims. The Court noted that it had three options:

> 1) stay the proceeding pending complete exhaustion of state remedies; (2) dismiss the petition, without prejudice, until the claims have been exhausted in state court, unless such review would be precluded pursuant to the [Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")]'s one-year statute of limitations; (3) afford the petitioner an opportunity to withdraw the unexhausted claim(s); or (4) deny the petition on the merits pursuant to 28 U.S.C. § 2254(b)(2).

(Paper 12 at 5) (citing Gandarilla v. Artuz, 322 F.3d 182, 186 (2d Cir. 2003); Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir. 2002)).

Dismissal without prejudice was not an option, since a re-filed petition would be barred by the AEDPA statute of limitations. Id. at 5-6. Ingerson did not appear willing to withdraw his claims, as his papers argued that the lack of exhaustion was excusable. The Court considered a stay,

4

but noted that a stay could only be granted in "'limited circumstances,'" and was appropriate only "'when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court.'" Id. at 7 (quoting Rhines v. Weber, 544 U.S. 269, 277 (2005)). Furthermore, under Rhines, a district court will be found to have abused its discretion if it grants a stay "when [petitioner's] unexhausted claims are plainly meritless." 544 U.S. at 277.

Because the parties had not yet briefed the merits of Ingerson's claims, and neither party had requested a stay, the Court denied the motion to dismiss and called for additional filings "addressing the substantive merits of Ingerson's claims, as well as any other issue the parties deem appropriate for briefing." (Paper 12 at 9) (adopted at Paper 13).

The respondent has now filed a memorandum arguing that the entire petition should be dismissed. The respondent's arguments, briefly stated, are that all of Ingerson's claims are meritless and that his unexhausted claims are procedurally barred. In opposition, Ingerson relies upon his reply to the respondent's initial motion to dismiss.

<u>Discussion</u>

I. <u>Exhausted Claims</u>

There is no dispute that Ingerson has exhausted his state court remedies with respect to several of his claims. The Court will address those claims first, and then proceed to the unexhausted claims.

For the exhausted claims, the Court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the AEDPA, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

"Clearly established Federal law" is comprised of "'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" <u>Green v. Travis</u>, 414 F.3d 288, 296 (2d Cir.

2005) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Earley v. Murray</u>, 451 F.3d 71, 74 (2d Cir. 2006).  A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Earley</u>, 451 F.3d at 74.

The AEDPA standard of review is deferential to the reasoning provided in state court decisions.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." <u>Gilchrist v. O'Keefe</u>, 260 F.3d 87, 93 (2d Cir. 2001) (quoting <u>Williams</u>,

529 U.S. at 411).  Also, state court factual determinations receive a presumption of correctness if they are "fairly supported by the record."  Williams v. Bartlett, 44 F.3d 95, 99 (2d Cir. 1994).

A.  Ineffective Assistance of Counsel

Ingerson contends that the Vermont Supreme Court unreasonably applied clearly established federal law when it rejected his claim of ineffective assistance of counsel. His ineffective assistance claim is based upon the allegation that his attorney failed to provide him an opportunity to read his pre-sentence investigation report ("PSI"), as required under Vt. R. Cr. P. 32.  Had he been given such an opportunity, he argues, he would have been able to challenge various factual statements in the report.

The first such statement was the assertion that, despite substantial substance abuse treatment, Ingerson continued to use his substance abuse as an excuse for his crimes.  In response, Ingerson allegedly would have argued that he was "mostly" drug and alcohol free from 1999 to 2002.  Second, Ingerson would have challenged the statement that he continued to commit crimes involving victims, noting that his drunk driving offenses did not injure anyone.

Third, he would have contested a claim that he had only paid $15 on his Department of Corrections ("DOC") phone debt of over $700. Ingerson states that his debt was actually closer to $1600, of which he had paid down over half. Fourth, he would have contested a statement that he was returned to jail seven times based upon furlough and criminal infractions, arguing that he was never charged with any new offenses. Fifth, he would have challenged a statement that he had failed two of seventeen drug tests, noting that one of the tests was administered before he began his programming. Finally, he claims that the PSI misquoted him as saying that he should not receive jail time for his burglary. (Paper 1-2 at 10-11).[1]

Ingerson raised these issues in his state PCR petition. The state superior court held an evidentiary hearing at which Ingerson, his former attorney, and expert witnesses for both sides testified. The court ruled that although counsel had violated Rule 32 by discussing the PSI with Ingerson over the phone rather than allowing him to read it, no prejudice was suffered. In re Ingerson, 2008 WL 2811220,

---

[1] At the PCR hearing, the State characterized the PSI as stating that Ingerson felt he was given "too long a sentence for the crimes committed before this incident." (PCR Tr. 6, Feb. 27, 2007).

at *1.

On appeal, the Vermont Supreme Court affirmed.

As the superior court stated, most of the proffered objections, to the extent that they were accurate, amounted to characterizing or supplementing facts rather than identifying errors. Furthermore, as the superior court observed, if anything, arguing over the nuances of such facts might have presented petitioner as an offender in denial, thereby undercutting his principal plea at sentencing that he needed treatment rather than incarceration.

Id. at *2. The court also found that four of Ingerson's proposed objections had actually been raised at the sentencing hearing.

In the PCR appeal, the Vermont Supreme Court cited its own case law, which in turn adhered to the standard for ineffective assistance of counsel claims set forth in Strickland v. Washington, 466 U.S. 668 (1984). In re Ingerson, 2008 WL 2811220, at *1 (citing In re LaBounty, 177 Vt. 635, 636 (2005) (citing In re Dunbar, 162 Vt. 209, 212 (1994))). Under Strickland, a petitioner must satisfy a two-part test in order to establish that his Sixth Amendment right to effective assistance of counsel has been violated. 466 U.S. at 687. He must first show that counsel's representation fell below an objective standard of reasonableness, and then establish that the deficient

performance of counsel prejudiced the defense.  Id. at
687-88.  In the habeas context, a petitioner must show that
"the [state court] applied Strickland to the facts of his
case in an objectively unreasonable manner."  Cox v.
Donnelly, 387 F.3d 193, 197 (2d Cir. 2004) (internal
quotation marks omitted) (quoting Bell v. Cone, 535 U.S.
685, 698-99 (2002)).

In applying the first prong of the Strickland test, a
court "must indulge a strong presumption that counsel's
conduct falls within the wide range of reasonable
professional assistance; that is, the defendant must
overcome the presumption that, under the circumstances, the
challenged action might be considered sound trial strategy."
Strickland, 466 U.S. at 689 (citation and internal quotation
marks omitted).  A court must "make every effort . .. to
eliminate the distorting effects of hindsight, to
reconstruct the circumstances of counsel's challenged
conduct, and to evaluate the conduct from counsel's
perspective at the time."  Id.; see also Cox, 387 F.3d at
198; United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir.
1987).  "The Sixth Amendment guarantees reasonable
competence, not perfect advocacy judged with the benefit of

hindsight." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 8 (2003).

Under the prejudice prong of the <u>Strickland</u> test, a habeas petitioner must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

In this case, the state courts reasonably determined that the facts did not support Ingerson's claims of prejudice, and applied the <u>Strickland</u> standard properly. With respect to Ingerson's first claim, the Vermont Supreme Court correctly found that the effectiveness of his substance abuse treatment was discussed at sentencing. (Sentencing Tr. 50, Feb. 7, 2003). Specifically, counsel noted that Ingerson was sober for three and a half years, and did not commit any new crimes between 1998 and the burglary in 2002. <u>Id.</u> at 50-51.

Similarly, as to Ingerson's claim that his drunk driving offenses were victimless, counsel noted at sentencing that most of Ingerson's criminal history involved drunk driving and property crimes. <u>Id.</u> at 48.[2] Counsel

---

[2] The court found this argument unpersuasive:

I'm frankly surprised that you haven't killed anybody yet. You've got seven DWI convictions, aggravated assault, two simple assaults, sexual battery, and here you are with all these victims

also accurately discussed the DOC telephone debt.  <u>Id.</u> at 52.  Accordingly, the record belies Ingerson's claim that he was prejudiced by his attorney's failure to raise any of these issues before the trial court.

Ingerson's next claim, that the pre-sentence report mis-characterized the reasons for his return to prison, is also unsupported by the record.  While Ingerson contends that he was not charged with any new crimes, and that his violations related to visits with his children, it is plain that the burglary in question was committed while he was on furlough.  <u>Id.</u> at 46.  Furthermore, a probation officer testified at sentencing that two furlough sanctions were issued for use of drugs or alcohol.  <u>Id.</u> at 15.

With respect to the two failed drug tests, Ingerson contends that one occurred before he began programming, "and that in substantial part his programming was working." (Paper 1-2 at 11).  According to the respondent, Ingerson attended five substance abuse programs in the three years prior to his first positive drug test.  (Paper 17 at 19). Respondent also notes that Ingerson's attorney highlighted

---

in your wake, luckily none of them are dead or seriously injured. <u>Id.</u> at 60.

the fact of only two positive drug tests during sentencing. (Sentencing Tr. 50, Feb. 7, 2003).

Ingerson's final argument is that he was misquoted in the pre-sentence report. When the author of the report was questioned at sentencing, however, he confirmed Ingerson's statement to the effect that he believed his sentence was too long. <u>Id.</u> at 6-7. The trial court found the witness credible, and this Court should accept that determination. <u>See</u> <u>Marshall v. Lonberger</u>, 459 U.S. 422, 432 (1983); <u>Nelson v. Walker</u>, 121 F.3d 828, 833 (2d Cir. 1997).

In sum, Ingerson's arguments lack support in the record and fail to show any prejudice resulting from the fact that he did not read the pre-sentence report. Moreover, even if the objections had all been made in exactly the manner he now proposes, their significance would have been limited as they "amounted to characterizing or supplementing facts rather than identifying errors." <u>In re Ingerson</u>, 2008 WL 2811220, at *2. The Court should therefore conclude that the state courts did not misapply the prejudice prong of the <u>Strickland</u> standard, and did not unreasonably determine the facts when they denied his claim of ineffective assistance of counsel.

B.  Failure To Arraign On Amended Charge

Ingerson's second argument is that the trial court
failed to arraign him on the habitual offender charge.  The
Vermont Supreme Court held that the "[f]ailure to arraign
does not amount to a structural error in the criminal
proceeding . . . absent a showing that the defendant
suffered prejudice from the omission.  Defendant must show,
therefore, that he did not have actual notice of the charges
against him or an adequate opportunity to defend himself . .
. ."  State v. Ingerson, 176 Vt. at 570 (citation omitted).
This language echoes the standard set forth by the U.S.
Supreme Court.  See Garland v. Washington, 232 U.S. 642, 645
(1914); see also State v. Cadorette, 175 Vt. 268, 271-72
(2003) (citing Garland standard).

The Vermont Supreme Court ruled that Ingerson had not
met this standard.  Specifically, the court found that
Ingerson had failed to show prejudice.

> Defendant does not dispute that he received a copy
> of the amended information in which the State
> noticed its intent to seek the enhanced penalty
> permitted its intent to seek the enhanced penalty
> permitted by 13 V.S.A. § 11.  The record shows
> that the court discussed the amended information
> with defense counsel in defendant's presence
> during a status conference the court held on July
> 9, 2002.  At that time, the court asked
> defendant's attorney whether she had received a

> copy of the amended information, to which defense
> counsel replied, "We have, your Honor, and I've
> discussed it with my client." The court commented
> that defendant faced a potential term of life
> imprisonment. The matter came up again just prior
> to trial. Before the jury was seated, defendant's
> attorney asked the court to confirm that it would
> not mention the habitual offender charge to the
> jury until after the jury finished deliberating on
> the burglary and unlawful mischief charges. The
> court confirmed the procedure, and the parties
> proceeded to try the case. Following the verdict,
> defendant waived his right to have the jury decide
> whether the State had proved his prior convictions
> beyond a reasonable doubt as 13 V.S.A. § 11
> requires.

State v. Ingerson, 176 Vt. at 431.[3]

Based upon these facts, it appears that Ingerson had knowledge of the habitual offender enhancement prior to his October 2002 trial, and sufficient opportunity to mount a defense. In upholding his conviction, the Vermont Supreme Court used the proper constitutional standard and did not unreasonably determine the facts. Ingerson's request for relief on this claim should, therefore, be DENIED.

C. Insufficient Evidence Of Intent

Ingerson's next claim is that the prosecution failed to prove beyond a reasonable doubt that he entered Walker's Restaurant with the intent to commit larceny. "Petitioner

---

[3] The transcript of the July 2002 status conference suggests that Ingerson was present while the habitual offender enhancement, and its potential impact on Ingerson's sentence, was discussed. Status Conf. Tr. at 7 ("STATE: Your Honor, before Mr. Ingerson leaves . . . ").

16

bears a 'very heavy burden' in attempting to obtain a writ of habeas corpus based upon an 'insufficiency of the evidence claim.'" Hernandez v. Conway, 485 F. Supp. 2d 266, 281 (W.D.N.Y. 2007) (quoting United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983). The Supreme Court has established that a habeas court must not inquire whether *it* believes the evidence proved guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (citing Woodby v. INS, 385 U.S. 276, 282 (1966)). Instead, the court must inquire whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)). The Vermont Supreme Court applied this same standard in Ingerson's direct appeal. State v. Ingerson, 176 Vt. at 432.

Although Ingerson initially told police that he went to Walker's Restaurant to recoup money, he now argues that his "sworn testimony was that he only went there with the intent to retrieve his own tools." (Paper 1-2 at 17). The evidence submitted to the jury, however, showed that

Ingerson nearly broke off the handle of the restaurant's safe.  The jury also heard that he spoke with the police and told them about his intent to steal money because he was in debt.  Finally, the jury saw a videotape of him breaking a rear window to gain entry into the restaurant.  With respect to this last fact, the Vermont Supreme Court found that "[t]he jury could infer that defendant decided to enter the restaurant by breaking a window in the back of the building because he wanted to conceal his presence there, and that his desire for secrecy derived from his intent to steal something from the restaurant that night."  State v. Ingerson, 176 Vt. at 571.

Having reviewed this evidence in a light most favorable to the prosecution, the Vermont Supreme Court concluded that there was sufficient evidence to support a conviction.  Id. Nothing in the state court's opinion violated or unreasonably applied federal law, and there is nothing in the record to suggest an unreasonable determination of the facts.  Accordingly, Ingerson has failed to carry his "very heavy burden" on this claim, and I recommend that his request for habeas corpus relief be DENIED.

D.  Unjust And Unfair Sentence

Ingerson's final claim on direct appeal was that his sentence was unjust and unfair. The U.S. Supreme Court has held that, under the Eighth Amendment, a sentence violates the constitution if it is "grossly disproportionate" to the crime for the which the defendant was convicted. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003). In Lockyer, the defendant was a repeat offender whose most recent offense was stealing approximately $150 worth of videotapes. Under California's recidivist sentencing scheme, he was sentenced to two consecutive terms of 25 years to life in prison. Explaining that "[t]he gross disproportionality principle reserves a constitutional violation for only the extraordinary case," the Supreme Court held that it was not an unreasonable application of clearly established law for a California court of appeals to find that the challenged sentence was constitutional. 538 U.S. at 77.

Here, Ingerson argued to the Vermont Supreme Court that his sentence of 20 to 30 years was disproportionate to his burglary offense, and that the sentence was motivated by bias against him. The Vermont Supreme Court disagreed. Acknowledging that the judge at sentencing made comments that were quite critical of the defendant, the court found

those comments justified.

> Defendant's criminal history goes back to 1988 and includes repeated, successive violations of probation and furlough conditions. Even when incarcerated, defendant demonstrated an inability to follow rules, resulting in disciplinary action against him while in prison. Defendant has admitted his substance abuse problem, but has not maintained sobriety even after repeated efforts to treat him. It was appropriate for the court to consider those facts and defendant's long history of criminal behavior when fashioning the proper sentence. At most, the court's comments may be said to reveal the judge's frustration with the defendant's recalcitrant criminality and a distaste for defendant's conduct, but the comments do not reveal personal bias against the defendant on the part of the judge.

State v. Ingerson, 176 Vt. at 435. The Court also upheld the sentence because it was within the statutory limits. Id.

None of the rulings at the state court level violated clearly established federal law. As in Lockyer, the defendant's most recent offense was part of a broader pattern of criminal behavior. The length of Ingerson's sentence was impacted significantly by his status as an habitual offender, and was not grossly disproportionate when his criminal history is taken into consideration. Moreover, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state

law." <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992).

Ingerson's request for relief on the basis of the length of

his sentence should, therefore, be DENIED.

## II.  <u>Unexhausted Claims</u>

Ingerson's remaining arguments were never raised before

the Vermont Supreme Court.  When claims in a federal habeas

petition have not been exhausted, the federal court may

determine that no available procedures remain in state

court.  <u>See</u> 28 U.S.C. § 2254(b) (petition shall not be

granted unless exhaustion has occurred or "there is an

absence of available state corrective process"); <u>see</u> <u>also</u>

<u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001).

Unexhausted claims may be procedurally barred from federal

habeas corpus review if they were decided at the state level

on "adequate and independent" procedural grounds.  <u>Coleman</u>

<u>v. Thompson</u>, 501 U.S. 722, 729-33 (1991).

The purpose of the procedural bar rule is to maintain

the balance of federalism by retaining a state's rights to

enforce its laws and maintain its judicial procedures as it

sees fit.  <u>Id.</u> at 730-33.  Thus, a federal habeas court may

not review a procedurally barred claim on the merits unless

the petitioner can demonstrate "cause for the default and

actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice." Id. at 750. A fundamental miscarriage of justice only occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986).

    A. Conflict Of Interest

    Ingerson's first unexhausted claim is that the prosecution and the Probation and Parole Office each had conflicts of interests. These conflicts, he argues, arose out of the fact that he "had previously contacted Federal Authorities regarding illegal activities of the Brattleboro Probation and Parole Office to include: growing marijuana and having drug paraphernalia, as well as alcohol in the office," and that he "had previously filed a complaint against the State's Attorney's office." (Paper 1-2 at 20).

    Ingerson concedes that this claim was not fully exhausted in the state courts. He reportedly included the claim in his lower court PCR petition, but "was forced to 'narrow' or forgo these claims in order to receive a ruling on his claim that trial counsel was ineffective for failing

to provide him an opportunity to read his presentence
report." (Paper 11 at 3) (emphasis in original). It is not
clear whether this "narrowing" involved a ruling by the
lower court. In any event, the claim was not raised again
on appeal.

Ingerson argues that re-filing in state court would be
futile because "these claims should have been presented on
direct review to the Vermont Supreme Court . . . ." (Paper
11 at 2). Indeed, under Vermont law, a PCR petition
generally may not be used to raise arguments that should
have been raised on direct appeal.

> Post-conviction review is not a substitute for
> appeal. Where the issues raised in a petition for
> post-conviction relief were contested at trial and
> were not raised on direct appeal, they will not be
> addressed on post-conviction review unless it is
> demonstrated that the failure to raise them on
> direct appeal was inadvertent, that appellate
> counsel was ineffective, or that extraordinary
> circumstances excused the failure to raise the
> issues on appeal.

In re Nash, 149 Vt. 63, 64 (1987) (citation omitted).
Because Ingerson has failed to argue for application of any
of the Nash exceptions, this Court should deem his claim
procedurally barred. See Fabre v. Taylor, 2009 WL 162881,
at *13 (S.D.N.Y. Jan. 20, 2009) (claim that could have been
raised on direct appeal but was not is procedurally barred

23

from habeas review) (citing <u>Washington v. James</u>, 996 F.2d 1442, 1446-47 (2d Cir. 1993)).

Ingerson makes no effort to show cause for, and prejudice resulting from, his default. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989) (citations omitted). Furthermore, as discussed above, he has failed to show that he is actually innocent of the burglary charge. His claim is, therefore, barred from federal habeas review.

Even without the procedural bar, however, his conflict of interest claims are plainly meritless.[4] The fact that a complaint was filed against prosecutors and others does not automatically disqualify them from participating in the proceedings. As the respondent properly notes, to do so would allow criminal defendants to manipulate the prosecution and, potentially, to forum shop. Moreover, while Ingerson claims that the prosecution's animus against him impacted its sentence recommendation, the sentence was

---

[4] The Second Circuit has not yet articulated the appropriate standard for denial of an unexhausted claim on the merits. District courts that have addressed the question appear to use one of two standards. Some courts review unexhausted claims to determine if they are "patently frivolous." <u>See</u>, <u>e.g.</u>, <u>Acosta v. Couture</u>, 2003 WL 272052, at *7 (S.D.N.Y. Jan. 23, 2003); <u>Pacheco v. Artuz</u>, 193 F. Supp. 2d 756, 761 (S.D.N.Y. 2002); <u>Hammock v. Walker</u>, 224 F. Supp. 2d 544, 549 (W.D.N.Y. 2002); <u>Cruz v. Artuz</u>, 2002 WL 1359386, at *8 (E.D.N.Y. June 24, 2002). Others analyze the claim to determine if it is "perfectly clear that the petitioner does not raise even a colorable federal claim." <u>Rosario v. Bennett</u>, 2002 WL 31852827, at * 17 (S.D.N.Y. Dec. 20, 2002); <u>see also</u> <u>Lambert v. Blackwell</u>, 134 F.3d 506, 514-15 (3d Cir. 1997).

handed down by a state court judge who is not alleged to
have had any such conflict in the matter.  His claims for
relief should, therefore, be DENIED.

B.  Underlying Felonies Used At Sentencing

Ingerson's next unexhausted claim is that his felony
drunk driving convictions should have been considered a
single offense for purposes of the habitual offender
enhancement.  He again argues that to bring this claim in
state court would be futile, both because it was not raised
on direct appeal and because the Vermont Supreme Court has
rejected similar arguments.  (Paper 11 at 2).  The Court
accepts Ingerson's assertion that the argument is
procedurally defaulted, and notes that he again fails to
argue either cause or prejudice for the default.

As to the merits, Ingerson claims that because his
multiple offenses occurred within a very short period of
time, and his convictions on each were entered on the same
day, the offenses should have been considered a single
felony at his burglary sentencing.  (Paper 6 at 2-3).  He
does not, however, cite any controlling case law to support
his position.  In particular, he fails to show that his
sentencing was unconstitutional.

Ingerson's case citations employ a federal Sentencing Guideline dealing with related offenses. Id. (citing United States v. Breckenridge, 93 F.3d 132 (4th Cir. 1996) (employing U.S.S.G. § 4A1.2); United States v. Chartier, 860 F. Supp. 19 (E.D.N.Y. 1994) (same)). As recent rulings on the federal Sentencing Guidelines make clear, see, e.g., United States v. Booker, 543 U.S. 220, 226-27 (2005), the Guidelines are not mandatory even in the federal courts, and their application is certainly not constitutionally required. Accordingly, even if this Court were to consider the reasoning of a Guideline section, that reasoning would not carry the weight of a constitutional mandate.[5]

"Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). Here, Ingerson has failed to show that the use of his drunk driving convictions under Vermont's habitual offender statute violated his federal constitutional rights. The Court should therefore find his legal claim on this point to be meritless.

---

[5] The Court need not offer any opinion as to whether Ingerson's underlying offenses would be considered a single offense under U.S.S.G. § 4A1.2

C.  Ineffective Assistance At Sentencing

In a related claim, Ingerson contends that his attorney was ineffective for failing to challenge the use of his multiple drunk driving convictions at sentencing.  As Ingerson himself states, however, such a challenge would have run counter to previous Vermont Supreme Court rulings. (Paper 11 at 2) (citing <u>State v. Angelucci</u>, 137 Vt. 272 (1979)).  Absent any showing that use of these offenses violated Ingerson's constitutional rights, and in light of Vermont's case law, it cannot now be argued that counsel was ineffective for failure to raise this issue in the state courts.

D.  Rule 32 Violation

Ingerson's last unexhausted claim is that counsel's failure to show him the PSI constituted reversible error, and that his case should have been remanded to the district court.  As discussed above, the Vermont Supreme Court reviewed this argument in the context of Ingerson's PCR, and specifically his ineffective assistance of counsel claim. The argument was never raised on direct appeal.

The Second Circuit has held that a post-conviction petition claiming ineffective assistance of appellate

counsel does not exhaust the issues underlying the ineffective assistance claim. Turner v. Artuz, 262 F.3d 118, 123 (2d Cir.), cert. denied, 534 U.S. 1031 (2001). "A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claims without detailed comment does not bespeak any necessary ruling on the underlying constitutional claim." Id.; see also Shaw v. Superintendent, Attica Corr. Facility, 2007 WL 951459, at *9 (N.D.N.Y. Mar. 28, 2007); Williams v. Bennett, 2003 WL 21143070, at *5 n. 4 (E.D.N.Y. Jan. 3, 2003). While Ingerson may have presented facts and case law with respect to his Rule 32 claim, he did so solely in the context of his ineffective assistance argument. Consequently, this claim was not exhausted in state court.

Like his other unexhausted claims, this argument is procedurally barred. Ingerson offers no discussion as to why the claim was not raised on direct appeal, and can show no resulting prejudice. Nor can he show a fundamental miscarriage of justice. As discussed above, the factual record belies Ingerson's claim that, had he been allowed to review the PSI, he would have raised objections that would

have impacted his sentence. Several of his objections were, in fact, raised by counsel at the sentencing hearing. Moreover, as the Vermont Supreme Court properly concluded, the significance of all proposed objections would have been limited. The Court should therefore find that this claim does not merit habeas corpus relief.

## Conclusion

For the reasons set forth above, I recommend that Ingerson's petition for a writ of habeas corpus (Paper 1), filed pursuant to 28 U.S.C. § 2254, be DENIED, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 2<u>nd</u> day of June, 2009.


<u>/s/ John M. Conroy</u>
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).